512 N.W.2d 152 (1994)
In the Matter of the Termination of Parental Rights Over M.A.C. and A.R.C.
No. 18183.
Supreme Court of South Dakota.
Argued October 4, 1993.
Decided February 2, 1994.
*153 Charles L. Dorothy, Sioux Falls, for appellant M.H.
Robert L. O'Connor, Sioux Falls, for appellee E.H.
HENDERSON, Justice.

PROCEDURAL HISTORY/ISSUES
In January 1989, CC (Natural Father), at the request of his ex-wife (EH), signed a petition voluntarily relinquishing his parental rights to MAC and ARC, their minor children. Two years later, Mother filed for divorce from MH (Stepfather), her husband when the termination order was entered. In March of 1992, she amended her divorce complaint to seek child support from Stepfather for her children from her previous marriage to CC. Under an adoption by estoppel theory, the divorce court determined Stepfather to be financially responsible for his stepchildren.[*] Stepfather then motioned to set aside the termination order, alleging that several procedural errors made the order void, which in turn would trigger Natural Father to be responsible for supporting MAC and ARC.
Although the trial court found that Stepfather had standing to challenge the order, it upheld the termination order, ruling the procedural errors harmless. Stepfather appeals on this singular issue:
Was the order terminating Natural Father's parental rights over his children valid?
We affirm.

FACTS
Since he divorced Mother in 1984, Natural Father has had no contact with his children and has repeatedly been in arrears with child support payments, even serving 30 days in jail for his failure to pay. On January 5, 1989, Natural Father signed, at the request of his ex-wife, a petition voluntarily surrendering his parental rights over the children. As it was his understanding that Stepfather was going to adopt the children, he gave Mother his power to consent to the adoption. In exchange for terminating his rights, he was released from paying future child support. Natural Father also signed a waiver of notice of the termination hearing. Five days later, Circuit Judge Judith K. Meierhenry approved the termination.
However, the paperwork trail fades at this point. Stepfather declined to sign the adoption consent forms. No order or notice of hearing was entered by Judge Meierhenry nor was Mother served with notice of the hearing. Furthermore, no verbatim transcript of the hearing can be found. Despite *154 these problems, both Mark Swanson, the attorney hired by Stepfather to handle the termination, and Judge Meierhenry state that a valid termination hearing did take place on January 10, 1989.

DECISION
Offhand, we have difficulty in determining how Stepfather has acquired standing; however, as this issue was not raised in the Notice of Review, it shall not be addressed here.
Due to alleged violations of SDCL ch. 25-5A, Stepfather asserts that the January 10, 1989 termination order is void. SDCL 25-5A-19 specifically provides that orders terminating parental rights are conclusive and binding on all parties except that an appeal may be taken within 30 days of the filing of the judgment, decree or order. Stepfather waited until the middle of his divorce from Motherthree years laterto challenge the order, well outside the 30-day window.
Nevertheless, "[a] void judgment is one where the court lacks jurisdiction over the subject matter or over the parties," Kromer v. Sullivan, 88 S.D. 567, 225 N.W.2d 591, 592 (1975) (quoting Lange v. Johnson, 295 Minn. 320, 204 N.W.2d 205 (1973)), and there is no limit on challenging void judgments. Id. Stepfather cites numerous occasions where the parties and trial court did not technically comply with SDCL ch. 25-5A. Absent an abuse of discretion, however, we will not disturb the trial court's decision. Overvaag v. City of Dell Rapids, 319 N.W.2d 171 (S.D. 1982).
Stepfather also seeks judicial review of the termination order based on SDCL 15-6-60(b), which allows a court to relieve a party from a final order where such order is void. Rule 60(b) is an extraordinary remedy which should be granted only where there has been a showing of exceptional circumstances. Matter of T.M.B., 416 N.W.2d 260 (S.D.1987). Over three years passed between the termination proceeding, which he helped initiate, and this action. Albeit the motion was not denied for the foregoing reason, we fail to see how this action was brought within a reasonable amount of time, as required for 60(b) motions. Anderson v. Somers, 455 N.W.2d 219 (S.D.1990). This action should be silenced on this lapse of time alone.
Due to circumstances beyond Judge Meierhenry's control, no verbatim transcript of the termination hearing, as required by SDCL 25-5A-17, can be found. Where the transcript, stenographic notes, or portions thereof are missing or lost, the aggrieved party is not necessarily entitled to revocation of an order. See State v. Dupris, 373 N.W.2d 446 (S.D.1985). "Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." Draper v. State of Washington, 372 U.S. 487, 495, 83 S.Ct. 774, 779, 9 L.Ed.2d 899 (1963); Dupris, 373 N.W.2d at 449.
Reconstruction will be the procedure followed in most cases, unless the appellant can show some specific error or prejudice resulting from the failure to record and/or preserve records of the trial proceedings. United States v. Alfonso, 552 F.2d 605, 620 (5th Cir.1977)... "The attorney, having been present at trial, should be expected to be aware of any errors or improprieties which may have occurred during the portion of the proceedings not recorded." [United States v.] Selva, 559 F.2d [1303] at 1306 [ (5th Cir.1977) ]. However, notes and memory can often be faulty or incomplete and it is up to the trial court to determine if a specific showing of prejudice exists and if adequate alternatives to a complete verbatim transcript alleviate the prejudice. Thus, the grant or denial of a motion for a new trial, because of lost or missing transcripts, or an order requiring reconstruction of the record, will be in the sound discretion of the trial court.
Dupris, 373 N.W.2d at 449. Through Mother's affidavit and Natural Father's testimony in these proceedings, plus copies of documents, the trial court was able to piece together what transpired at the January 10, 1989 hearing. All were in accord as to the terms of the order. Only Stepfather, who did not attend the hearing, disputes the record. Thanks to the reconstruction of the *155 record, the trial court preserved the proceedings. It did not abuse its discretion by refusing to void the order based on a missing transcript. Id.
Under SDCL 25-5A-6(8), the petition for voluntary termination of parental rights requires consent of the person to whom parental rights are to be transferred. In his petition, Natural Father transferred his parental rights to Mother "with the power in such person to consent to the adoption of said children by [Mother] without further notice to [Natural Father]." It is undisputed that Mother solicited her ex-husband to petition the trial court and sought his consent to the termination; Mother has never challenged the petition; and Mother confirmed her consent to the termination in her affidavit. Proper procedure dictates that the consent should have been included with the petition. No party to these proceedings, however, including Stepfather, disputes Mother's consent. Under these facts, the failure to physically attach the consent form was harmless error. Matter of T.K., 462 N.W.2d 893, 896 (S.D.1990).
Upon the filing of the termination petition, Stepfather asserts that the trial court failed to set a hearing date and failed to serve notice of the time, place, and purpose of the hearing upon Mother. SDCL 25-5A-9; SDCL 25-5A-11. Although Mother did not execute a waiver of notice as SDCL 25-5A-9 requires, she maintains that she was aware of the proceeding as she encouraged Natural Father's petition and does not claim her rights were violated by lack of official notice. Enough said.
At a January 5, 1989 meeting with the attorney representing Mother and Stepfather and Tom Pokela, the latter attorney representing the state Department of Social Services Child Support Enforcement office, Natural Father was advised of his rights and responsibilities. Thereafter, he signed the Petition and Waiver of Notice and declined to attend the termination hearing. It is the duty of the trial court to determine whether parents are fully aware of the proceeding and consequences of their actions. T.M.B., 416 N.W.2d at 263. His awareness was confirmed during the October 8, 1992 motion hearing, where the trial court found that Natural Father "fully knew all of his rights and the consequences of his signing" the petition.
Stepfather claims Natural Father's absence at the termination hearing means the trial court had no jurisdiction to enter the order. Though Natural Father's failure to appear and failure to file a power of attorney with the trial court do not specifically comport with SDCL 25-5A-14, we hold that the spirit of the statute was met in this case. In the petition, Natural Father gave Mother the power to consent to the adoption of the children which, in effect, serves as power of attorney. The goal of SDCL 25-5A-16 is to ensure that the petitioner knows his rights and responsibilities, as well as the consequences of his action. As noted earlier, Natural Father attested to this knowledge in the petition and at the October 8 hearing. Although Mother's affidavit does not indicate whether she made her mandatory SDCL 25-5A-14 appearance at the termination hearing, the trial court's third Conclusion of Law maintains that she was present. Stepfather offers no evidence to dispute such a conclusion, and we do not seek reasons to reverse. Marnette v. Morgan, 485 N.W.2d 595 (S.D. 1992).
Finally, Stepfather claims the order did not, as required by SDCL 25-5A-18, transfer Natural Father's parental rights to anyone. Paragraph 3 of the petition's prayer specifically requests a transfer of Natural Father's parental rights to Mother. In the order, the trial court acknowledged Natural Father's consent to termination, the best interests of the children, and that "all of the other allegations of the petition are true." Simply stated, the trial court concurred with Natural Father's transfer of parental rights to Mother and incorporated this concurrence into the order. Certainly the order could have been more precise, but all parties, including Stepfather, were well aware that Natural Father had relinquished to Mother his parental rights.
According to SDCL 15-6-61, our state statute on harmless error, "The court at every stage of the proceeding must disregard *156 any error or defect in the proceeding which does not affect the substantial rights of the parties." Kotteakos v. United States, 328 U.S. 750, 760, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), examined the harmless error rule, stating, "Do not be technical, where technicality does not really hurt the party whose rights in the trial and in its outcome the technicality affects." We agree. In as much as both Mother and Natural Father sought the termination of Natural Father's parental rights, perforce neither party was harmed by the procedural lapses in the termination hearing. Stepfather particularly was not harmed by any errors or by the valid termination of Natural Father's parental rights.
Under Malcolm v. Malcolm, 365 N.W.2d 863 (S.D.1985), an itemized statement is required upon which to base a prayer for attorneys' fees. Such an itemization was filed herein by Mother. Upon review, we are convinced that no proper record has been made for any attorneys' fee award at the trial court level. However, there are items set forth in the statement which justify an award at the appellate level. We have carefully reviewed this itemization. Mother prevailed in this action. In the interest of justice, we award $1,255.50 plus 6% state tax on services. SDCL 15-17-38.
Termination order affirmed.
WUEST, SABERS and AMUNDSON, JJ., concur.
MILLER, C.J., dissents.
MILLER, Chief Justice (dissenting).
The decision of this court is a serious miscarriage of justice. It leaves two innocent children without support from either their Father or their Stepfather. In the words of Justice Henderson, "I am convinced that this is the most unjust decision that I have seen in the annals of domestic relations law in this state." Schaack v. Schaack, 414 N.W.2d 818, 822-23 (S.D.1987) (Henderson, J., dissenting). "[T]he law, unfortunately, has not protected the weak[the children]; rather, it has inflicted injustice upon [them]." Id.
In my opinion the trial court's termination of parental rights was void for lack of jurisdiction, as there was not a sufficient showing the petitioners appeared at a hearing as required by SDCL 25-5A-14.[1] Moreover, contrary to the assertion of the majority, this court has previously held "a motion to vacate a void judgment [SDCL 15-6-60(b)(4)] would not be restricted by the reasonable time provisions of SDCL 15-6-60(b)." Kromer v. Sullivan, 88 S.D. 567, 570, 225 N.W.2d 591, 592 (1975); Johnson v. Bruflat, 45 S.D. 200, 186 N.W. 877 (1922). Therefore, the delay in seeking relief is irrelevant.
Even under SDCL 15-6-60(b)(6), this is an extraordinary situation where the "intervening equities" require the order of termination to be set aside. Cf. In re T.M.B., 416 N.W.2d 260, 263 (S.D.1987). Therefore, the failure of the trial court to set aside the judgment for procedural defects was an abuse of discretion. Id. The errors in this proceeding are far more than technical or harmless errors, they affected substantial rights of the parties.[2]
I wish to express that procedural justice is subordinate to substantive justice. If the courts of law devise a standard or rule of justice, it must inordinately follow that these standards or rules of procedure result in a just decision or outcome.
*157 State v. Bucholz, 403 N.W.2d 400, 405 (S.D. 1987) (Henderson, J., dissenting). Further, this court has previously held that the voluntary termination of parental rights provisions of SDCL ch. 25-5A are to be met with strict compliance. T.M.B., 416 N.W.2d at 262; In re J.M.J., 368 N.W.2d 602 (S.D.1985), rev'd on other grounds, 379 N.W.2d 816 (S.D.1985).
There exists no evidence that during the termination hearing the trial court ensured Mother was aware that termination of natural Father's rights, without a simultaneous adoption by Stepfather, would leave the children with neither Father nor Stepfather legally responsible for their support and care. SDCL 25-5A-16.[3] It is incumbent on the trial court to ensure the parents are fully aware of the consequences of their actions in a termination proceeding. T.M.B., 416 N.W.2d at 263; J.M.J., 379 N.W.2d at 818. The trial court's failure to do so has left Mother as the sole person financially responsible for the care of these two children.[4] Thus, Mother's right to support from the children's natural Father has been substantially affected. Accord, Hershey v. Hershey, 467 N.W.2d 484, 487 (S.D.1991) (discussing custodial parent's right to child support); State v. Zobel, 81 S.D. 260, 274, 134 N.W.2d 101, 109 (1965) (stating "each spouse has an equal duty to support and protect the child") cert. denied, 382 U.S. 833, 86 S.Ct. 74, 15 L.Ed.2d 76 (1965); SDCL 25-7-6.1.
Additionally, South Dakota law requires "the best interest of the child shall be considered paramount." SDCL 25-5A-15 (emphasis added). There is no showing in this sparse record that such a determination was made. "The children's best interest requires that they be supported." Stach v. Stach, 369 N.W.2d 132, 136 (S.D.1985). Further, the result of the court's failure to make such a determination is that the children are now left with only one parent responsible for all their financial and physical care.[5] "A child is not deprived of its right to protection and support by its father, because of any family quarrel or agreement[.]" Zobel, 81 S.D. at 278, 134 N.W.2d at 111. Moreover, the children are now left without the guidance and love of a father.[6] "Children can be psychologically damaged when a parent is entirely cut out of their life." Hanson v. Hanson, 397 N.W.2d 656, 658 (S.D.1986) (Henderson, J., concurring). Such a result is not in the best interest of the children.
Although "rule 60(b) is an extraordinary remedy which should be granted only where there has been a showing of exceptional circumstances," T.M.B., 416 N.W.2d at 263, this is a case where justice requires the trial court's termination order be set aside. The procedure affirmed by the majority of this court has left two children without the support of their natural Father, with no "other plan" for their care and support. This violates the entire purpose of South Dakota's law on voluntary termination of parental rights. SDCL 25-5A-2.[7] I respectfully dissent.
NOTES
[*] For further proceedings on the adoption by estoppel claim, see E.H. v. M.H., 512 N.W.2d 148 (S.D.1994).
[1] SDCL 25-5A-14 provides:

The personal presence of the petitioner or petitioners at the hearing shall be jurisdictional; provided however, that all persons whose consent is necessary, except the mother, may appear by a person filing with the court a power of attorney. In the event that the department of social services or licensed child placement agency has custody of a child by written agreement of a parent or parents with power of attorney to consent, its secretary or his authorized agent may appear and consent.
[2] SDCL 15-6-61 provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
[3] SDCL 25-5A-16 provides:

At the time of the hearing the court, after full and complete inquiry, shall determine whether the petitioner or petitioners are fully aware of the purpose of the proceedings and the consequences of their act.
[4] In her brief in E.H. v. M.H., 512 N.W.2d 148 (S.D.1994), Mother claims she is now left with no support for the children, "except for her meager earnings."
[5] This is even more harmful in this particular case as Mother's testimony in E.H. v. M.H. indicates one of the children has a learning disability.
[6] I note that although natural Father was in arrears in his child support, there is evidence that at the time Mother proposed termination of his parental rights, he was in the process of a court action to force Mother to allow him visitation with the children.
[7] SDCL 25-5A-2 provides:

The procedure for the voluntary termination of parental rights for the purpose of adoption or, if a suitable adoption plan cannot be effected, for the purpose of providing for the care of the child by some other plan which may or may not contemplate the continued possibility of eventual adoption, may be initiated whenever it appears that the parent or parents of any child desires to relinquish such parental rights.